Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MCKINNEY MACHINE SHOP, INC. | § | CASE NO.11-43913-11 |
| | § | |
| | § | Chapter 11 |
| DEBTOR | § | |

**DISCLOSURE STATEMENT OF MCKINNEY MACHINE SHOP, INC. PURSUANT TO SECTION 1125**
**OF THE BANKRUPTCY CODE DATED JULY 8, 2011**

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

**I**
**INTRODUCTION**

**Identity of the Debtors**

McKinney Machine Shop, Inc., ( "Debtor" or "McKinney") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas Fort Worth Division ("Court") on July 8, 2011. Debtor operates a machine shop in Everman, Texas. The Debtor purposes to restructure its current indebtedness and continue its operations to provide a dividend to the unsecured creditors of Debtor.

### Purpose of Disclosure Statement; Source of Information

Debtor submits this Disclosure Statement ("Disclosure Statement"); pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Reorganization dated July 8, 2011 ("Plan"). This Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

### Explanation of the Process of Confirmation

The Bankruptcy Code allow a Debtor to place its various creditors into groups or Classes. Each Class of creditors consists of creditors with substantially similar types of claims against a Debtor. These Classes of Creditors are allowed to vote on the Debtor's proposed repayment plan. Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the plan discharges the debtors from all of their pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**. Claimants in Classes 1 and 5 are not impaired under the Plan. Such Class is deemed to have accepted the Plan.

**Impaired Classes**. Classes 2, 3 and 4 are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2, 3 and 4. Each holder of an Allowed Claim in Classes 2, 3 and 4 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

Except to the extent permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, ballots that are received after the Voting Deadline will not be accepted or used by the Debtor in connection with the Debtors' request for confirmation of the Plan.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt) acceptance and revocation or withdrawal of ballots or master ballots will be determined by the Debtor in its sole discretion, whose determination will be final and binding.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 1100, Dallas, Texas 75251. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7

liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

Feasibility   The Bankruptcy Court must also find that the plan proposed by the Debtor is feasible, that is, that it has a reasonable prospect of success. As set forth in the projections attached as Exhibit "B" the Debtor believes it will have sufficient future income to make the payments required under the plan.

Cramdown

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

## II
## REPRESENTATIONS

[Note: Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of Reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan. A copy of the Plan is attached hereto as Exhibit "A".]

[After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

The information contained in this Disclosure Statement has been derived from the Debtor, unless specifically stated to be from other sources.

**NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE**

ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTORS ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

# FINANCIAL PICTURE OF THE DEBTORS

## Financial History and Background of the Debtor

The Debtor started with one machine in 1989 out of a rented building. The first year the Debtor's principal, Mike McKinney, had a day job and ran the machine at night. The Debtor's business quickly grew and soon it moved into larger facilities, added equipment and employees.

The Debtor manufactured printing press parts, oil field parts, and other metal furnished parts. Since 1995 the Debtor has grossed over $1,000,000.00 in sales, except for one year 1999. The Debtor has kept most of its original employees with hardly any turnovers with our base crew. The Debtor offers health plans as well as 401k plans.

In 1995, one of the Debtor's largest customers Heildelburg Harris placed a $100,000.00 order for printing press rollers. The Debtor made the parts but subbed-out the weldments that were put on these parts. These parts were later rejected and returned to McKinney Machine because of bad weldments and the Debtor had to pay back the $100,000.00. Therefore, the Debtor lost this customer and started factoring invoices to help cash flow. In one year the companies sales dropped to $680,000.00.

In 2001 the Debtor filed for protection under Chapter 11. The Debtor filed a Plan of Reorganization and began paying back its creditors. The Debtor continued to suffer revenues losses due to increased competition and high than expected operating costs. The Debtor struggled to make its payments over the next three years. The Debtor again fell behind on payroll taxes to the Internal Revenue Service.

In 2004 the Debtor filed a chapter 11 bankruptcy and repaid all its creditors. However, in late 2009 the economic downturn hit the Debtor's business. The Debtor once again fell behind on taxes to the Internal Revenue Service and his property taxes. When the Debtor was unable to reach an agreement with the IRS, the IRS placed a lien against the Debtor in summer of 2011. The lien prevented the Debtor from continuing his factoring arrangement which necessitated this filing.

## Post Petition Operations

Once this case was filed the Debtor sought an order from the Court to allow it to continue its factoring agreement with Goodman Factors. With the ability to factor its accounts and the current work load of the Debtor, the Debtor believes it can operates the company and preform under the terms of the Plan.

## Future Income and Expenses Under the Plan

Attached hereto as Exhibit "B" are projections of gross income, expenses and net operating income for the next year. It is anticipated that after confirmation, the Debtor will continue in business. Base upon the projections, the Debtor believes it can service the debt to the Internal Revenue Service, the tax creditors, and pay a 100% dividend to the unsecured creditors.

## Post-Confirmation Management

Upon Confirmation of the Debtor's Plan, Mike McKinney will be President. The salary

of Mr. McKinney will be $52,000 per year.

## IV.

## ANALYSIS AND VALUATION OF PROPERTY

The Company operates a machine shop in Everman, Texas. The value of the assets of the Company if liquidated would not be sufficient to pay the IRS debt. The Company believes there is very little likelihood of any dividend to the unsecured creditors in the event of a liquidation of the assets of the Debtor.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "C".**

## V.
## SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 5 categories of Claimants. These claimants will receive cash payments over a period of up to five years beginning the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Articles V and VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $7,500 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the Effective Date. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and maybe required to file post-confirmation operating reports until this case is closed. The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Secured or Priority IRS Claims)** are impaired and shall be satisfied as follows: The Allowed amount of all Tax Creditor Claims shall be paid out of the revenue

from the continued operations of the business. The Tax Creditor Claims are alleged to be the Internal Revenue Service ("IRS")Claims for 941 taxes and other federal taxes asserted to be approximately $122,611. The Plan intends to treat the IRS claim as a priority Class 2 claim. The Class 2 claim will be paid in full over a 60 month period from the date of the petition, commencing on the Effective Date with interest at a rate of 4% per annum. The monthly payment to the IRS will be approximately $2,246.82. Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan that is not timely cured herein. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

( a ) If the Debtor or its successor in interest fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default, if not cured under © below.

( b ) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

( c ) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to sent two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

( d ) The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

( e ) All payment will be sent to: Leo Carey/ IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above. The Class 2 creditor is impaired under this Plan.

**Class 3 Claimants (Allowed Secured Property Tax Claims)** are impaired and shall be satisfied as follows: The Allowed amount of all Secured Property Claims shall be paid out of the revenue from the continued operations of the business. The Secured Property Claims are alleged to

be $100,000, and certain property tax claims of the Everman ISD, City of Everman and Tarrant County ("Taxing Authority"). The Debtor intends to treat the claims of Everman ISD, City of Everman and Tarrant County as secured claims. These claims will be paid in full over a 60 month period from the Petition Date commencing on the Effective Date with interest at a rate of 12% per annum. The monthly payment to the Taxing Authorities will be approximately $2,224.44. The Taxing Authorities shall retain their liens on the Debtor's property until paid in full. The Class 3 Claimants are impaired under this Plan.

**Class 4 Claimants (Allowed Unsecured Creditors)** are impaired and shall be satisfied as follows: the Debtor's shall pay to the Unsecured Creditors up to 100% of their Allowed Claims, without interest, in 60 payments. The first payment will be due 30 days after the Effective Date. The debtor will make payments of $500 per month to pay the unsecured creditors. The Class 4 creditors are impaired under this Plan.

**Class 5 (Current Shareholders)** are impaired under the Plan and shall be satisfied as follows: The current shareholders has receive no payments under the Plan, however, the current shareholders shall be allowed to retain their stock in the Reorganized Debtor. The Class 5 shareholders are impaired under this Plan.

## ARTICLE VI
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this Plan or the offer, issuance, sale or purchase of securities.

None of the Debtor, the Debtor-in-possession, the Reorganized Debtor nor any of their employees, officers, directors, agents or representatives, nor any professionals employed by them or any of their members, agents, representatives or professional advisors, shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to formulating, implementing, confirming or consummating this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan.

## VII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "B". The Debtor believes that the projections are conservative based upon the historical operations of the business. Based upon the projections, the Debtor believes the Plan to be feasible.

Neither the Debtors, nor any members, officers, directors, employees, agents, or professionals shall have or incur any liability to any holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Cases the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

## VIII.
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the Plan as set forth in Article XIV of the Plan.
THIS PLAN SHALL BE THE SOLE AND EXCLUSIVE REMEDY FOR ANY CREDITOR OF THE DEBTOR DEALT WITH HEREIN, SO LONG AS DEBTOR OR THE REORGANIZED DEBTOR ARE NOT IN DEFAULT UNDER THE PLAN.

## IX.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $122,000 to the Internal Revenue Service and $100,000 tot he Property Tax Creditors. Claims to the IRS and Property Taxes must be paid prior to the unsecured creditors receiving any payment. The Debtor believes the value of the assets if liquidated would not exceed the IRS debt and therefore, a liquidation would result in no distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "C"

## X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtors. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.

## XII.
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any such litigation which could be brought for the benefit of the creditors of the estate.

Dated: July 8, 2011.

Respectfully submitted,

McKinney Machine Shop, Inc.


   /s/ mike McKinney
By: Mike McKinney
Its: President

LIQUIDATION ANALYSIS -EXHIBIT C

| ASSETS | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| CASH | 5,000 | 5,000 |
| OFFICE FURNITURE | 1,000[1] | 2,500 |
| MACHINERY | 50,000 | 50,000 |
| INVENTORY | 4,000 | 4,000 |
| TOTAL | 60,000 | 61,500 |
| | | |
| LIABILITIES | | |
| ADMINISTRATIVE | 7,500 | 7,500 |
| TAXES | | |
|    IRS | 122,000 | 122,000 |
|    PROPERTY | 100,000 | 100,000 |
| UNSECURED | UNKNOWN | UNKNOWN |
| | | |
| DIVIDEND TO UNSECURED | 0% | 100% |

---

[1] Debtor believes a liquidation of the desks, chairs and other furniture would yield no more the 40% of cost.